## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Mark R. Krueger,

                    Plaintiff,          Case No. 19-10581

v.                                      Judith E. Levy
                                        United States District Judge
Experian Information Solutions,
Inc., Trans Union LLC, and Cenlar       Mag. Judge David R. Grand
FSB,

                    Defendants.

_____/

### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEY FEES AND REIMBURSEMENT OF COSTS AND EXPENSES FROM DEFENDANT CENLAR FSB [75]

Before the Court is Plaintiff's Motion for an Award of Attorney Fees and Reimbursement of Costs and Expenses from Defendant Cenlar FSB ("Cenlar"). (ECF No. 75.) Plaintiff requests that the Court award him "$442,196.45 in attorney[] fees and taxable costs" from Defendant Cenlar. (*Id.* at PageID.1658.) For the reasons set forth below, the motion is granted in part and denied it in part.

### I.    Background

Plaintiff brought this action under the Fair Credit Reporting Act ("FCRA") against Cenlar and two other Defendants that settled before Cenlar.[1] (ECF No. 1, PageID.1.) On February 13, 2023, Plaintiff informed the Court that he had settled with Cenlar. (ECF No. 72.)  Cenlar objects to the reasonableness of the hourly rates and the number of hours sought by Plaintiff in this motion.

## II.   Legal Standard

"[I]n the case of any successful action to enforce any liability under [the Fair Credit Reporting Act, the defendant is liable for] the costs of the action together with reasonable attorney[] fees as determined by the court." 15 U.S.C. § 1681n(a)(3).

The Sixth Circuit has set forth the following criteria for determining reasonable attorney fees:

> A starting point is to calculate the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. (This is known as the "lodestar" calculation.) The court should then exclude excessive, redundant, or otherwise unnecessary hours.

---

[1] The two Defendants that settled prior to the settlement with Cenlar are Experian Information Solutions, Inc. and Trans Union, LLC.

*Wayne v. Village of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994) (cleaned up). Although there is a strong presumption that prevailing parties are entitled to a lodestar fee, *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000), the prevailing party "should submit evidence of the hours worked and the rates sought. If documentation of hours is inadequate, the district court may reduce the award accordingly." *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016). The party seeking fees has the burden of "documenting its work." *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 617 (6th Cir. 2007). In determining attorney fees and costs, the Court has significant discretion, which is "entitled to substantial deference." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008). "A district court may rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Van Horn v. Nationwide Prop. and Cas. Ins. Co.*, 436 Fed. App'x 496, 499 (6th Cir. 2011).

## III.  Analysis

Plaintiff has not requested a reasonable hourly rate, nor has he provided adequate evidence of the reasonable hours expended on this

litigation. Further, this case is not the rare instance where an upward adjustment is appropriate. Accordingly, the Court will grant Plaintiff attorney fees and costs, but it will not award the full amount of requested fees.

### A. Reasonable Rate for Counsel

Hourly rates for counsel are set according to the "prevailing market rate in the relevant community," which in this case is the Eastern District of Michigan. *Adcock-Ladd*, 227 F.3d at 350 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). A reasonable fee is intended to "attract competent counsel yet [] avoid[] producing a windfall for lawyers." *Id.* at 349. The rates that Plaintiff requests do not align with the prevailing market rate.

#### i. *Plaintiff's Requested Rates for Counsel*

Plaintiff requests the following hourly rates for attorney Tarek Chami:

a. 57.5 hours at $375 per hour during the year 2018
b. 185.4 hours at $[425] per hour during the year 2019
c. 140.7 hours at $[475] per hour during the year [sic] 2020 and 2021
d. 87.9 hours at $[500] per hour during the year [sic] 2022 and 2023

(ECF No. 75, PageID.1660–1661.)

4

Plaintiff requests the following hourly rates for attorney David A. Chami:

    a. 69.7 hours at $500 per hour during the year 2019
    b. 110.7 hours at $550 per hour during the year 2020
    c. 77.2 hours at $650 per hour during the year 2021
    d. 103.4 hours at $725 per hour during the years 2022 and
    2023

(*Id.* at PageID.1661)

The Court begins by noting the inconsistencies in the motion related to the requested rates for Tarek Chami. In Tarek Chami's Declaration and his billing records, the rate requested is $425 per hour for 2019, $475 per hour for 2020 and 2021, and $500 per hour for 2022 and 2023. (*See* ECF No. 75-1; ECF No. 75-3, PageID.1701.) In the memorandum in support of the motion, the requested rate for Tarek Chami is $400 per hour for 2019, $450 per hour for 2020 and 2021, and $475 per hour for 2022 and 2023. (ECF No. 75, PageID.1661.) Because the requested fees and costs appear to reflect the rates provided in the Declaration and billing records ($425, $475, and $500 per hour), the Court will assume that those are the rates requested by Plaintiff. (*See* ECF No. 75, PageID.1677; ECF No. 75-1.) However, these discrepancies

raise questions about the accuracy of what Plaintiff has provided the Court, which compounds the concerns set forth below.

To justify Plaintiff's proposed rates, he relies upon a Fee Survey that provides rates from 2017–18, which Plaintiff asserts indicate a "25% median" of $250 per hour and a "95% median" of $588 per hour for consumer credit cases in Michigan. (ECF No. 75, PageID.1666.) Plaintiff then relies on an online inflation calculator to estimate rates for 2023. (*Id.* at PageID.1667 ("Michigan litigators handling credit rights cases noted above would average between $301/hr (25% median) and $710/hr (95% median) in January 2023.").)

## ii. Prevailing Market Rates for Consumer Law Attorneys

Courts in this District have found that "the State Bar Report data for consumer law lawyers is likely the most accurate representation of what such lawyers in this market charge." *Smith v. Lexisnexis Screening Sols., Inc.*, No. 13-CV-10774, 2015 WL 9459724, at *4 (E.D. Mich. Dec. 28, 2015) (considering hourly rates in a FCRA case); *see also Pittman v. Experian Info. Sols.*, No. 14-13591, 2020 WL 2933351, at *3 (E.D. Mich. June 3, 2020). The Court will therefore rely on the State Bar Report.

Cenlar urges the Court to reduce the hourly rate requested by Plaintiff, citing to the State Bar of Michigan's 2020 Attorney Income and Billing Rate Summary Report ("2020 State Bar Report"). (ECF No. 78-3.) The 2020 State Bar Report lists 25th percentile billing rates for consumer law in Michigan at $220 per hour, median rates at $300 per hour, 75th percentile rates at $425 per hour, and 95th percentile rates at $600 per hour. (*Id.* at PageID.2364.) The 2023 State Bar Report lists 25th percentile billing rates for consumer law at $235 per hour, median rates at $330 per hour, 75th percentile rates at $450 per hour, and 95th percentile rates at $600 per hour. State Bar of Michigan, <u>2023 Economics of Law Survey Results</u>, ("2023 State Bar Report"), https://www.michbar. org/file/pmrc/pdfs/2_2023EOL_SurveyResults.pdf.

The Court relies upon Reports from the relevant periods of this litigation to determine the prevailing market rate, finding that these rates most accurately reflect the prevailing market rates over the course of this litigation. *See Gonter v. Hunt Valve Co.*, 510 F.3d 610, 617 (6th Cir. 2007) ("[T]he district court has the discretion to choose either current or historical rates so long as it explains how the decision comports with the ultimate goals of awarding reasonable fees"). These Reports appear

7

to be issued by the State Bar every three years. *See* State Bar of Michigan, Research and Reports, https://www.michbar.org/opinions/content. The Court will therefore utilize data from the most recently issued Report for each year of the litigation, specifically the 2017, 2020, and 2023 State Bar Reports. State Bar of Michigan, 2017 Economics of Law Practice Attorney Income and Billing Rate Summary Report ("2017 State Bar Report"), https://www.michbar.org/file/pmrc/articles/0000153.pdf; 2020 State Bar Report, (ECF No. 78-3); State Bar of Michigan, 2023 Economics of Law Survey Results, ("2023 State Bar Report"), https://www.michbar.org/file/pmrc/pdfs/2_2023EOL_SurveyResults.pdf.

The rates requested by Plaintiff are high, both in relationship to the State Bar Reports and relative to the rates awarded in FCRA cases in the Eastern District of Michigan. *See Greene v. Equifax Info. Servs., LLC*, No. 19-cv-11094, 2021 WL 5444768, at *2 (E.D. Mich. Mar. 15, 2021) (awarding rates of $375 per hour for two lawyers and $160 per hour for paralegals); *Firneno v. Radner Law Grp., PLLC*, No. 2:13-cv-10135, 2017 WL 3675613, at *1 (E.D. Mich. Aug. 25, 2017) (awarding rates of $400 per hour and $375 per hour to experienced attorneys, reducing a request for $450 per hour based on State Bar Report's median rates for consumer

law); *Smith*, 2015 WL 9459724, at *3–4 (awarding rates of $423 per hour, $400 per hour, and $180 per hour for lawyers, and $148 per hour for paralegals); *Cancilla v. Experian Info. Sols.*, No. 1:18-cv-13239, 2019 WL 5680338 (E.D. Mich. Aug. 6, 2019) (recommending sanctions for a simple discovery dispute in a FCRA case and noting that "the requested rate of $375 is at the higher end of the scale, but not by much"). In determining a reasonable hourly rate, the Court does not rely only on these similar cases, where awards to experienced attorneys are rarely much higher than $400 per hour. However, these cases reveal that Plaintiff's requested fees are excessive relative to this market. Here, the lowest rate Plaintiff requested was $375 per hour for Tarek Chami in 2019, when he had roughly 6 years of experience as a licensed attorney. (*See* ECF No. 75-3, PageID.1701.) The highest rate requested is for David Chami in 2022 and 2023, at $725 per hour when he had been a licensed attorney for roughly 12 to 13 years. (*See* ECF No. 75-2, PageID.1696.) These rates are outside the norm for what is awarded in FCRA cases in the Eastern District of Michigan. Moreover, the State Bar Reports suggest that what Plaintiff's counsel requests is excessive.

### iii.  *Calculating the Prevailing Market Rate*

The State Bar Reports provide hourly rates at different percentiles, so the Court must determine where David Chami and Tarek Chami fall relative to these percentiles. Cenlar proposes that the Court follow the State Bar Reports' and set rates "not exceeding the 75th percentile for [David Chami] and the median for [Tarek Chami]." (ECF No. 78, PageID.2319.) Plaintiff asserts that David Chami is in the 95th percentile and Tarek Chami is in the 75th percentile of consumer law attorneys. (ECF No. 83, PageID.2470–2471.) To make this determination, the Court must compare them to attorneys of "comparable skill and experience." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). Here, David Chami had at most 13 years of experience as an attorney by the end of the billing period and Tarek Chami had at most 12 years of experience. (ECF No. 75-2, PageID.1695; ECF No. 75-3, PageID.1701.) David Chami had been focused on consumer law for 8 years and Tarek Chami had been focused on consumer law for 5 years. (ECF No. 75-2, PageID.1696; ECF No. 75-3, PageID.1701.) In their

10

Declarations, both attorneys list a variety of experiences, including the outcomes of some of their litigation.[2] (*See* ECF Nos. 75-2, 75-3.)

In FCRA cases involving attorneys with significantly more years of experience than both of Plaintiff's counsel, courts have awarded at a rate "slightly higher than the 75th percentile" ($423 per hour) for a senior partner, Ian Lyngklip, with a "specialty in consumer law for approximately the last 15 years." *Smith*, 2015 WL 9459724, at *4; *see also Firneno*, 2017 WL 3675613, at *1 (awarding a similar rate to Mr. Lyngklip). Plaintiff has not shown that either lawyer here should receive a higher rate than the 75th percentile in this FCRA case. Each party estimates the gap between David Chami and Tarek Chami at around 20–25 percentiles. (ECF No. 83, PageID.2470–2471 (asserting that David Chami is in the 95th percentile and Tarek Chami is in the 75th percentile); ECF No. 78, PageID.2319 (arguing the rate should "not exceed[] the 75th percentile for [David Chami] and the median for [Tarek

---

[2] In David Chami's Declaration, he directs the Court's attention to a case where he was awarded $500 per hour. (ECF No. 75-2, PageID.1699.) In that case, the court stated that although the requested rates "give the Court considerable pause" it would grant the requested rates "given the absence of any opposition" from the defendant. *Parker v. Peters & Freedman, LLP*, No. SA CV 17-0667, 2019 WL 174979, at *3 (C.D. Cal. Jan. 11, 2019).

Chami]").) David Chami's skills and experience place him, at most, around the percentile of Mr. Lyngklip, an attorney whom courts in this District have found is around the 75th percentile. Given the range the Parties generally suggest exists between David Chami and Tarek Chami, as well as the assertions offered about Tarek Chami's experience, Tarek Chami is at the median.

Based on the "party's submissions, awards in analogous cases, state bar association guidelines, and [the Court's] own knowledge and experience," the Court finds that David Chami is at the 75th percentile for consumer attorneys and Tarek Chami is at the median. *Van Horn*, 436 Fed. App'x at 499. As set forth above, the State Bar Reports published during this litigation are the most accurate sources for determining the prevailing market rates for consumer attorneys at these percentiles.

Accordingly, the Court follows other courts in this District and relies upon the State Bar Reports' data about consumer lawyers and awards the following rates:

| Year | Requested Rate for Tarek Chami | Awarded Rate for Tarek Chami |
|---|---|---|
| 2018 | $375 per hour | $300 per hour |
| 2019 | $425 per hour | $300 per hour |
| 2020–21 | $475 per hour | $300 per hour |
| 2022–23 | $500 per hour | $330 per hour |

| Year | Requested Rate for David Chami | Awarded Rate for David Chami |
|---|---|---|
| 2019 | $500 per hour | $400 per hour |
| 2020 | $550 per hour | $425 per hour |
| 2021 | $650 per hour | $425 per hour |
| 2022–23 | $725 per hour | $450 per hour |

*iv. Prevailing Market Rates for Paralegal Work*

Finally, Plaintiff initially failed to offer any information about requested hourly rates for paralegal work, including information about the paralegal's experience and qualifications. Only in Plaintiff's reply brief did he provide information about one of his paralegals. There, Plaintiff cites to the same Fee Survey he relied upon to support David Chami and Tarek Chami's requested rates, which he asserts—when adjusted for inflation—indicates a $143.22 per hour rate for paralegals

at consumer law firms and a $128.65 per hour rate for paralegals in Detroit. (ECF No. 83, PageID.2473–2474.) Because Sincie Chacko, the paralegal who did most of the work, was a law graduate and then a licensed attorney, Plaintiff argues they should receive an above-median rate. (*Id.* at PageID.2474.) Although the billing records suggest that other individuals did paralegal work on the case, Plaintiff does not provide any further information about them. With the exception of the discrepancies in paralegal billing rates set forth below, the requested rate in the billing records is generally $150 per hour. Cenlar argues that $100 per hour is appropriate. (ECF No. 78, PageID.2319.)

The State Bar Reports do not provide information about paralegal rates. However, "[along with rates of $160 per hour, b]illing rates of anywhere from $125 [per hour] to $140 [per hour] have also been approved in this district." *Aljahmi v. Ability Recovery Servs., LLC*, No. 2:17-CV-13772, 2022 WL 891416, at *2 (E.D. Mich. Mar. 25, 2022) (citations omitted); *see also Argueta v. Argueta-Ugalde*, No. 22-12840, 2023 WL 4206071, at *2 (E.D. Mich. June 27, 2023) (awarding $135 per hour for paralegal work in a case where the petitioner failed to provide information about the paralegals). Given Plaintiff's failure to provide

14

adequate information about the paralegals who worked on this case, the Court finds that Plaintiff should be awarded a rate that is toward the bottom of the scale in this District. Accordingly, Plaintiff is awarded $125 per hour for paralegal work.

### B. Reasonable Hours

The next step in the lodestar analysis is to multiply the hourly rate by the number of hours expended, exclusive of "excessive, redundant, or otherwise unnecessary hours." *Wayne*, 36 F.3d at 531. Cenlar objects that Plaintiff is billing excessively for legal research, drafting of the complaint, review of pleadings and discovery, drafting of the motion for summary judgment, mediation, administrative work, a focus group, the appeal, and the motion for attorney fees. There are indeed numerous and remarkable problems with the billing records provided by Plaintiff.

In performing a lodestar analysis, "[t]he district court . . . should exclude from [its] initial fee calculation hours that were not 'reasonably expended.'" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "The party applying for an award of fees should exercise billing judgment with respect to hours worked." *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 552 (6th Cir. 2008) (internal quotations omitted) (quoting *Hensley*, 461

15

U.S. at 437). "[T]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle*, 515 F.3d at 553. Courts may reduce requested fees when there are issues with excessive billing, inaccuracy, vague billing, and block-billing. *Hensley*, 461 U.S. at 434 (holding that hours that are "excessive, redundant, or otherwise unnecessary" are not reasonable); *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 575–76 (6th Cir. 2019) (affirming a reduction for vagueness and block-billing); *Imwalle*, 515 F.3d at 552 (requiring sufficient documentation of hours expended); *Sevy v. Barach*, No. 17-13789, 2022 WL 4234951, at *5–10 (E.D. Mich. Sep. 14, 2022) (reducing an award for excessive billing, vague billing, block-billing, and accuracy issues). Here, there are issues with excessive billing, inaccuracy, block-billing, and apportionment of hours between Defendants. A reduction is warranted.

### i. Excessive Billing

First, these records include excessive billing throughout. Some examples reveal this clearly. One entry records 5.4 hours to put together

16

the table of contents and authorities for the motion for summary
judgement, a task that could not possibly take this long. (ECF No. 75-1,
PageID.1682.) Similarly, one entry bills 4.2 hours for reviewing a brief
and making a "table of context[sic]/table of authorities." (*Id.* at
PageID.1685.) Tarek Chami bills .4 hours for emailing opposing counsel
about not getting a response to an email. (*Id.* at PageID.1688.) Another
entry bills .5 hours for creating a file and saving documents in it. (*Id.* at
PageID.1679.) David Chami records 15.1 hours over two block-billed
entries to prepare a statement of facts that runs less than four pages, to
outline an argument, and to review various documents for the motion for
summary judgment. (*Id.* at PageID.1682; *see* ECF No. 33, PageID.170–
173 (Motion for Summary Judgment Statement of Facts section).) The
billing records are replete with tasks that, based on the Court's
knowledge of this case and experience with litigation, are billed for an
excessive number of hours. Cenlar is correct that Plaintiff's billing is
"highly excessive and unreasonable." (ECF No. 78, PageID.2324.)

### ii. *Accuracy Issues*

Additionally, there are clear mistakes in the billing records and
other evidence provided to the Court, which raise troubling questions

17

about the general accuracy of these records. For instance, one entry from when all three Defendants were still in the case states "Total Time Spent 5.3 hours - apportioned to Cenlar 5.5." (ECF No. 75-1, PageID.1679.) This entry suggests Plaintiff is apportioning more time to Cenlar than the task took. In one entry for a paralegal task, the entry bills at $650 per hour for .2 hours for receiving a notice and calendaring a date. (*Id.* at PageID.1685.) All the other paralegal rates from the same period are generally $150 per hour. (*Id.*) Nonetheless, another entry lists the paralegal's rate as $475 per hour for .1 hours for receiving a brief. (*Id.*) The same deviation appears for a paralegal receiving and saving an opinion, which is listed as .2 hours at a rate of $475 per hour. (*Id.* at PageID.1686.) Nothing in the briefing or the records provided explains or justifies these deviations. Another entry states that Tarek Chami "[a]ttended Rule 16 Conference with Judge Levy in Ann Arbor 3.5 hours prorated to 2 for Cenlar," though the time entry is 2.4 hours. (*Id.* at PageID.1680.) The Court is left to guess whether Plaintiff omitted .4 hours in the description of the activity or whether he added .4 hours to the time entry. Further, in addition to the discrepancies set forth above related to Tarek Chami's hourly rate, Plaintiff acknowledges that it was

18

an oversight to omit "information regarding the paralegal staff responsible for the billed entries" in his original brief. (ECF No. 83, PageID.2474.) The Sixth Circuit instructs that individual entries should be read "in the context of the billing statement as a whole." *Imwalle*, 515 F.3d at 554. On their own, one or two of these mistakes might not give the Court pause, but—in the context of the other problems set forth here—they raise serious concerns about these records' reliability.

Cenlar also objects to awarding fees for counsel's time conducting a focus group. It argues that the fees are "excessive, redundant and unnecessary" and expresses skepticism that such a focus group was ever held. (ECF No. 78, PageID.2332.) Cenlar's assertions about the excessiveness of the focus-group fees are conclusory and the Court will not presume, without further evidence, that Plaintiff improperly included this focus group in his billing. But there are problems with these entries, nonetheless. Plaintiff includes 10.9 hours of block-billing over two days for both attorneys' preparation for the focus group. (ECF No. 75-1, PageID.1687.) Each counsel is listed as holding an 8-hour focus group on a different day. (*Id.*) Plaintiff does not explain whether two focus groups were held, which would raise worries about duplicative billing, or

19

whether there was an error in the listed dates, which would raise concerns about billing accuracy. (*See* ECF No. 83, PageID.2485–2486.) Either way, the billing for the focus group further compounds the issues with the records Plaintiff has provided to the Court.

### iii. *Block-billing*

To make matters worse, there is block-billing throughout these records. (*See, e.g.*, ECF No. 75-1, PageID.1682 (block-billing 9.1 hours over two days in 2019); *id.* at PageID.1685 (block-billing 11.3 hours over two days in 2021).) Many billing records are vague and fail to explain what work was done on what issue, beyond stating that some general part of the litigation was begun or completed. (*See, e.g.*, ECF No. 75-1, PageID.1680 ("Finalized Discovery Requests to Cenlar. Completed RFPs and Rogs" for 7.5 hours); *id.* at PageID.1687 ("Begain [sic] preparing MILs" for 6.8 hours)) Block-billing does not always require a reduction in the fee awarded to a prevailing party, so long as "the description of the work performed is adequate." *Ne. Ohio Coalition*, 831 F.3d at 705 n.7. However, these deficiencies make it difficult for the Court to assess the reasonableness of the number of hours expended for each task. *See Wayne*, 36 F.3d at 531. While Plaintiff may not be obligated to eschew

block-billing or to engage in standardized or contemporaneous billing practices, (*See* ECF No. 83, PageID.2468), Plaintiff's failure to do so in a manner that provides the Court with certainty that his requests are reasonable supports a reduction of the award. *See Howe v. City of Akron*, No. 5:06-cv-2779, 2016 WL 916701, at *12 (N.D. Ohio Mar. 10, 2016) ("attorneys who engage in block billing do so at their own risk"); *Imwalle*, 515 F.3d at 553 (citing cases where courts reduced fees for block-billing and failure to maintain contemporaneous records).

### iv.  *Apportionment of Time Between Defendants*

Plaintiff appears to have arbitrarily chosen when to apportion some hours to Defendants who settled before Cenlar and when to refrain from doing so. Courts distinguish the hours for which different defendants are responsible when awarding fees. *See Greene*, 2021 WL 5444768, at *2. Plaintiff acknowledges that some activities in the billing records involve multiple Defendants such that the time should not be entirely apportioned to Cenlar. (*See, e.g.*, ECF No. 75-1, PageID.1679 ("Email from Mark - Provided responses to Disputes from CRAs. Reviewed responses to disputes. Analyzed claims under 1681s-2 and 1681i - Total Time Spent 6.1 hours, apportioned Cenlar 5.6" (emphasis omitted)).)

21

Cenlar objects that Plaintiff's billing for preparing the Complaint "should be reduced in half" to account for the failure to distinguish what portion of the Complaint addresses Cenlar and what portion addresses the other Defendants. (ECF No. 78, PageID.2326.) Cenlar also notes that Plaintiff fails to apportion the time spent on depositions between Cenlar and the other Defendants. (*Id.* at PageID.2328.) Plaintiff offers no explanation for his choice to apportion time to Defendants other than Cenlar in some entries and not in others. Plaintiff fails to explain why he did not apportion the time involved in drafting the Complaint. He responds to the objections about the depositions by noting that Cenlar's counsel participated in the depositions, a point that is nonresponsive and merely supports apportioning some but not *all* the hours spent at the depositions to Cenlar. (ECF No. 83, PageID.2484.) Plaintiff's billing attributes more hours to Cenlar than is reasonable.

### v.  *Applying a Reduction*

For the reasons set forth above, the Court has serious concerns about the reasonableness and accuracy of these records. These doubts require a reduction in fees, insofar as the Court cannot say with "a high degree of certainty that such hours were actually and reasonably

expended in the prosecution of the litigation." *Imwalle*, 515 F.3d at 553 (cleaned up).

In cases where there are problems with billing records, the Sixth Circuit has held that across-the-board reductions are appropriate. *Hubbell*, 933 F.3d at 575–76 ("we cannot say that the court exceeded the scope of its authority in reducing the number of billed hours by 35 percent due to the lack of specificity and duplication in the attorneys' billing records"); *see also Yellowbook, Inc. v. Brandeberry*, 708 F.3d 837, 849 (6th Cir. 2013). In making such a reduction, the Court is "not required to act as [a] green-eyeshade accountant[] and achieve auditing perfection but instead must simply [] do rough justice." *Ne. Ohio Coalition*, 831 F.3d at 703 (cleaned up). Instead, the Court must provide a "clear and concise" explanation of the reasons for such a reduction, as it has above, enumerating and exemplifying the type of deficiencies present in Plaintiff's billing records. *Minor v. Comm'r of Soc Sec.*, 826 F.3d 878, 884 (6th Cir. 2016) (cleaned up).

The billing problems set forth here are comparable to those found in other cases where courts have imposed reductions. *See Sevy*, 2022 WL 4234951, at *8 ("Considering the fact that Marko Law did not keep

23

contemporaneous records or provide adequate evidence to support its reconstructed records, that it used block billing, and that many entries were excessive and possibly inaccurate, the Court will apply a 35 percent reduction to the hours submitted[.]”); *see also Auto Alliance Int'l, Inc. v. U.S. Customs Serv.*, 155 Fed. App'x 226, 228 (6th Cir. 2005) (affirming a 25 percent across-the-board reduction); *Heath v. Metropolitan Life Ins. Co.*, No. 3:09–cv–0138, 2011 WL 4005409, at *10 (M.D. Tenn. Sep. 8, 2011) (collecting cases and ultimately imposing a 20 percent reduction). Accordingly, due to the Court's concerns about block-billing, excessive billing, vagueness, and billing accuracy, a 35 percent reduction is warranted.

The charts below summarize the lodestar analysis set forth above and the resulting award:

| Year | Tarek Chami Requested Hours | Tarek Chami Awarded Hours After 35 Percent Reduction | Tarek Chami Awarded Rate | Lodestar |
|---|---|---|---|---|
| 2018 | 57.5 | 37.375 | $300 | $11,212.50 |
| 2019 | 185.4 | 120.51 | $300 | $36,153 |
| 2020–21 | 140.7 | 91.455 | $300 | $27,436.50 |

| | | | | |
|---|---|---|---|---|
| 2022–23 | 87.9 | 57.135 | $330 | $18,854.55 |
| Total | | 306.475 | | $93,656.55 |

| Year | David Chami Requested Hours | David Chami Awarded Hours After 35 Percent Reduction | David Chami Awarded Rate | Lodestar |
|---|---|---|---|---|
| 2019 | 69.7 | 45.305 | $400 | $18,122 |
| 2020 | 110.7 | 71.955 | $425 | $30,580.88 |
| 2021 | 77.2 | 50.18 | $425 | $21,326.50 |
| 2022–23 | 103.4 | 67.21 | $450 | $30,244.50 |
| Total | | 234.65 | | $100,273.88 |

Though Plaintiff does not provide the Court with the number of hours billed by paralegals, the billing records requested 858.4 hours in total (ECF No. 75-1, PageID.1688) and the two attorneys billed 832.5 hours. (ECF No. 75, PageID.1660–1661.) The number of hours attributable to the paralegals appears to be the difference between these two numbers, 25.9 hours. Applying the 35 percent reduction yields 16.835 hours of paralegal work. At the awarded rate of $125 per hour, the lodestar for paralegal work is $2,104.38.

Accordingly, the total lodestar here is $196,034.80.

## C. Other Factors

In calculating attorney fee awards, the Court may also consider:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Paschal v. Flagstar Bank*, 297 F.3d 431, 435 (6th Cir. 2002). Modifications based on these factors are proper only in rare or exceptional cases. *Adcock-Ladd*, 227 F.3d, at 350.

This case does not warrant a modification of the lodestar. Plaintiff does not, for instance, support their claim that there is anything novel about this case, instead describing FCRA cases in general terms and pointing out that this case involved an appeal and preparation for trial. (ECF No. 75, PageID.1663.) These activities are well within the norm in civil litigation. So too is the contingent fee agreement that Plaintiff repeatedly emphasizes. (*See, e.g.*, ECF No. 75, PageID.1668, 1673.) Plaintiff points to the amount of the settlement, which Cenlar claims is

26

a violation of the settlement agreement. (ECF No. 78, PageID.2321.) Plaintiff asserts that the settlement is above "above the [statutory] maximum" for actual damages, because other provisions of statute made greater damages available. (ECF No. 75, PageID.1668.) Plaintiff cites nothing that indicates anything rare or exceptional about this result that suggests an upward departure is called for. Plaintiff has a high burden to justify increasing the award above the lodestar, as calculated above. He has not met that burden here.

## IV.   Costs

Finally, the Court considers the costs requested by Plaintiff. A losing defendant is liable for costs under the FCRA. 15 U.S.C. § 1681n(a)(3). Plaintiff seeks $2,643.95 in costs and adequately documents these costs. (ECF No. 75-1, PageID.1689–1694.) The Court will award $2,643.95 in costs.

## V.   Conclusion

Accordingly, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for An Award of Attorney Fees and Reimbursement of Costs and Expenses from Defendant Cenlar FSB and awards $196,034.80 in attorney fees and $2,643.95 in costs.

IT IS SO ORDERED.

Dated: February 8, 2024              s/Judith E. Levy
Ann Arbor, Michigan                   JUDITH E. LEVY
                                      United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 8, 2024.

                                      s/William Barkholz
                                      WILLIAM BARKHOLZ
                                      Case Manager